IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRAVIS SOTO, | ) | CASE NO.  3:21-CV-00167-DCN |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| SHERIFF BRIAN SIEKFER, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is the Petition of Travis Soto ("Soto" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 (Doc. No. 1), the Answer/Return of Writ (Doc. No. 14), Petitioner's Traverse (Doc. No. 16), and Respondent's Sur-Reply (Doc. No. 17).  Soto is being held in custody at the Putnam County Jail.  For the following reasons, the undersigned recommends that the Petition be denied.

## I.  Summary of Facts

The Ohio Supreme Court set forth the factual background of this case:

{¶ 4} As recounted by both parties, the relevant facts are as follows. In January 2006, Soto's son, Julio, was killed. Based on Soto's statements at the time, authorities believed that the child had died in a tragic ATV accident.

{¶ 5} In 2006, Soto gave authorities two different stories about what had happened. Initially, Soto told investigators that he had accidentally run over Julio with an ATV after turning a corner around a building on his property. Later, Soto told authorities that Julio had been riding with Soto on the vehicle and was struck after he fell off. The Lucas County Coroner's Office conducted an autopsy and concluded that Julio's injuries were consistent with an ATV accident.

{¶ 6} After being charged with child endangering under R.C. 2919.22(A) and involuntary manslaughter under R.C. 2903.04(A), Soto negotiated a plea agreement. He pleaded

guilty to child endangering, and the involuntary-manslaughter charge was dismissed. Soto was sentenced to five years in prison, which he served.

{¶ 7} But it turns out that Julio's death may not have been accidental. In July 2016, Soto went to the Putnam County Sheriff's Office and confessed that he had beaten the child to death and fabricated the ATV accident. A doctor specializing in pediatric abuse reviewed the 2006 autopsy report and photographs taken at the time and concluded that the child's injuries were consistent with Soto's more recent story. Specifically, the doctor pointed to the fact that there were no bone fractures, which would normally be expected in an ATV accident. Authorities then indicted Soto for aggravated murder, murder, felonious assault, kidnapping, and tampering with evidence.

*State v. Soto*, 2019-Ohio-4430, 158 Ohio St. 3d 44, 44–45, 139 N.E.3d 889, 891–92, *cert. denied*, 141 S. Ct. 138, 207 L. Ed. 2d 1082 (2020).

## II. Procedural history

### A. 2006 Proceedings

On March 31, 2006, the Putnam County Grand Jury indicted Soto for involuntary manslaughter in violation of Ohio Revised Code ("O.R.C.") §2903.01(C) for causing the death of another as a proximate result of committing or attempting to commit a felony (Count 1) and child endangering in violation of O.R.C. §2919.22(A) and (E)(1)(c) (Count 2) in connection with the death of his two-year-old son, Julio, on January 23, 2006.  Doc. No. 12-1, p. 6.  Soto, through counsel, pled not guilty.  Doc. No. 12-1, p. 7.

On July 6, 2006, Soto entered into a plea agreement with the state whereby he agreed to plead guilty to the child endangering count and the state agreed to dismiss the involuntary manslaughter count.  Doc. No. 12-1, pp. 20-23.  On the same day, the trial court accepted Soto's guilty plea on the child endangering count.  Doc. No. 12-1, pp. 9-18.

On August 31, 2006, the trial court held a sentencing hearing on the child endangering count and sentenced Soto to five years in prison.  Doc. No. 12-1, pp. 24-50.  He was released in 2011.

2

**B. 2016 Proceedings**

On July 25, 2016, Soto went to the Putnam County Sheriff's Department and spoke to Detective Roy Sargent. Doc. No. 12-1, pp. 102-138. Soto told Detective Sargent that he had previously lied about how his son died and that he had not hit him with an ATV by accident. He detailed how he had beat Julio to death that day and then staged the scene to align with his story about the ATV accident. He explained that he chose to confess because he had become religious while in prison. Based upon his unsolicited confession, Soto was arrested on charges of murder and tampering with evidence. Doc. No. 12-1, p. 135.

**1. Trial Court Proceedings**

On August 15, 2016, the Putnam County Grand Jury indicted Soto for the murder of Julio. The indictment charged him with aggravated murder in violation of O.R.C. §2903.01(C) for purposely causing the death of another under the age of thirteen (Count 1); murder in violation of O.R.C. §2903.02(B) for causing the death of another as a proximate result of committing or attempting to commit a felony of the first or second degree that is an offense of violence (Count 2); felonious assault in violation of O.R.C. §2903.11(A)(1) (Count 3); kidnapping in violation of O.R.C. §2905.01 (Count 4); and tampering with evidence in violation of O.R.C. §2921.12(A)(1) (Count 5). Doc. No. 12-1, pp. 67-68. Soto, through counsel, pled not guilty to the indictment. Doc. No. 12-1, p. 69.

On October 11, 2016, Soto, through counsel, filed a Motion to Dismiss on the Grounds of Double Jeopardy. Doc. No. 12-1, pp. 71-72. In his motion, Soto asserted that his 2016 indictment for aggravated murder and murder were barred by double jeopardy because the involuntary manslaughter charge that had been dismissed pursuant to the 2006 plea agreement was a lesser included offense of murder and aggravated murder. *Id*. The trial court held a

3

hearing and overruled Soto's motion to dismiss.  Doc. No. 12-1, pp. 80-145.  The trial court ruled that the 2006 involuntary manslaughter count with the child endangering predicate was not a lesser offense of murder with the felonious assault predicate charged in 2016, and that double jeopardy did not bar the 2016 indictment because the state could not have discovered with reasonable diligence the underlying facts that supported that indictment in 2006.  *Id*.

### 2. Soto's Interlocutory Appeal to the Ohio Court of Appeals

On May 2, 2017 Soto, through counsel, appealed the trial court's denial of his motion to dismiss to the Ohio Court of Appeals, Third Appellate District.[1]  Doc. No. 12-1, p. 146.  In his brief, he raised one assignment of error and related issue:

> The trial court erred overruled Defendant's Motion to Dismiss on Double Jeopardy Grounds. [sic]
>
> Whether the Defendant's earlier guilty plea to involuntary manslaughter barred prosecution for murder and aggravated murder 11 years later.

Doc. No. 12-1, p. 173.  Soto argued that his 2016 prosecution was barred because the dismissed involuntary manslaughter count was a lesser-included offense of murder and aggravated murder and because a negotiated plea "prohibits successive prosecutions where the defendant would reasonably believe his or her plea would bar further prosecution for any greater offense related to the same factual scenario."  Doc. No. 12-1, p. 176.

The Ohio Court of Appeals reversed the trial court's denial of Soto's motion to dismiss in a 2-to-1 decision.  *State v. Soto*, 94 N.E.3d 618, 2018-Ohio-459 (Ohio Ct. App. 2018).  The court, relying on *Blockburger v. United States*, 284 U.S. 299 (1932), and *State v. Thomas*, 61 Ohio St.2d 254, 259 (1980), found that "because Involuntary Manslaughter constituted a lesser included offense of Aggravated Murder and Murder, the principles of Double Jeopardy would

---

[1] In Ohio, a defendant is permitted to take an interlocutory appeal of a denial of a motion to dismiss on double jeopardy grounds.  *State v. Anderson*, 2014-Ohio-542, 6 N.E.3d 23, 32 (Ohio 2014)

prevent a subsequent prosecution of Soto for Aggravated Murder and Murder in this instance." *Id*. at 626.

### 3. The State's Appeal to the Ohio Supreme Court

On March 19, 2018, the state appealed to the Ohio Supreme Court.  Doc. No. 12-1, pp. 237-238.  The Ohio Supreme Court accepted jurisdiction and the case proceeded to briefing on the merits and oral arguments.  Doc. No. 12-1, pp. 235-236, 288.

On October 19, 2019, the Ohio Supreme Court, in a 6-to-1 decision, reversed the decision of the court of appeals.  *State v. Soto*, 2019-Ohio-4430, 139 N.E.3d 889 (Ohio 2019).  The Ohio Supreme Court found that jeopardy had not attached to the involuntary manslaughter count because it was dismissed prior to trial and that, therefore, the Double Jeopardy Clause did not bar Soto's prosecution for murder and aggravated murder.  *Id*. at 893-894.

### 4. Soto's Appeal to the United States Supreme Court

On February 27, 2020, Soto, through counsel, filed a Petition for a Writ of Certiorari in the United States Supreme Court.  Doc. No. 12-1, p. 455.  The Court denied Soto's petition for certiorari on June 22, 2020.  *Soto v. Ohio*, 141 S.Ct. 138 (2020).

## C. Soto's Federal Habeas Petition

On January 21, 2021, Soto, through counsel, filed a federal habeas petition pursuant to 28 U.S.C. §2241.  Doc. No. 1.  In his petition, he advanced a single ground for relief:

> The Double Jeopardy Clause of the Fifth Amendment Precludes the State of Ohio from Trying Travis Soto a Second Time for the Death of His Son Because It Previously Convicted Him for the Death which Resulted in Mr. Soto Serving a Five-Year Sentence.

Doc. No. 1, p. 10.

The Respondent filed a Return of Writ (Doc. No. 14), the state court record (Doc. No. 12), and autopsy and photograph exhibits under seal (Doc. No. 13).  Soto filed a Traverse (Doc.

No. 16) and Respondent filed a Sur-Reply (Doc. No. 17).

## II. Standard of Review

As a pretrial detainee challenging his confinement, Soto filed his habeas petition pursuant to 28 U.S.C. § 2241. *Phillips v. Ct. of Common Pleas, Hamilton Cty*., Ohio, 668 F.3d 804, 809 (6th Cir. 2012) (an indicted, in-custody habeas petitioner asserting a double jeopardy violation proceeds under §2241; "We have long recognized that pretrial detainees pursue habeas relief [ ] under § 2241."). Habeas petitions governed by § 2241 are not subject to the deferential standards contained in § 2254(d); rather, they are reviewed *de novo*. *Id*. at 810.

## III. Law and Analysis

### A. Double Jeopardy Clause

The Double Jeopardy Clause states that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The prohibition against double jeopardy protects against three harms: 1) a second prosecution for an offense after initial acquittal; 2) a second prosecution for an offense after an initial conviction; and 3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Soto asserts that his claim rests on the second layer of protection— a second prosecution for an offense after an initial conviction. Doc. No. 1, p. 11. Where successive prosecutions are at stake, the guarantee serves "a constitutional policy of finality for the defendant's benefit." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *United States v. Jorn*, 400 U.S. 470, 479 (1971)).

"The protections afforded by the Clause are implicated only when the accused has actually been placed in jeopardy." *United States v. Martin Linen Supply Co*., 430 U.S. 564, 569 (1977) (citing *Serfass v. United States*, 420 U.S. 377 (1975)). Thus, in order to determine

6

whether the Double Jeopardy Clause protects a defendant from a second prosecution, courts must first determine whether jeopardy attached in the initial proceeding. *Serfass*, 420 U.S. at 388; *Martinez v. Illinois*, 572 U.S. 833, 838 (2014). That question is answered by applying the following, "bright-line rule": Jeopardy attaches when a defendant is put to trial. *Id*. at 839 ("*Serfass* does not apply a functional approach to the determination of when jeopardy has attached."). It has long been recognized that jeopardy attaches in a jury trial when the jury is empaneled and sworn and in a bench trial when the court begins to hear evidence. *Serfass*, 420 U.S. at 388 (citing *Downum v. United States*, 372 U.S. 734 (1963); *Wade v. Hunter*, 336 U.S. 684 (1949)). Courts have also determined that jeopardy attaches in the context of a guilty plea, *Ricketts v. Adamson*, 483 U.S. 1, 8 (1987); *United States v. Bearden*, 274 F.3d 1031, 1037-38 (6th Cir. 2001), and in certain circumstances regarding pretrial dismissals, *Serfass, supra*.

Soto's double jeopardy claim arises out of his pretrial guilty plea pursuant to a plea agreement. Prior to trial in 2006 on a two-count indictment, Soto pled guilty to one count of child endangering and the state dismissed one count of involuntary manslaughter. The parties agree that jeopardy attached to the child endangering count that Soto pled guilty to. Doc. No. 1, p. 16; Doc. No. 14, p. 9. They disagree as to whether jeopardy attached to the dismissed involuntary manslaughter count. Because the 2016 indictment charged Soto with aggravated murder and murder and involuntary manslaughter is a lesser included offense of those murder charges, if jeopardy had attached to the involuntary manslaughter count dismissed in 2006 then the 2016 murder charges would implicate the Double Jeopardy Clause.[2] *Brown*, 432 U.S. at 169

---

[2] The Ohio Supreme Court has held that involuntary manslaughter is a lesser included offense of murder. *See, e.g.*, *State v. Thomas*, 533 N.E.2d 286 (1988). This Court is bound by that determination. *Bradshaw v. Richey*, 546 U.S. 74, 78 (2005) (A federal court is bound by a state court's interpretation of its own state law). The parties agree that Soto may only challenge the 2016 murder charges and not the additional charges brought in the 2016 indictment. Doc. No. 14, p. 21; Doc. No. 16, p. 28.

7

("[T]he Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense.").

Neither the United States Supreme Court nor the Sixth Circuit has decided whether jeopardy attaches to a count dismissed pursuant to a plea agreement prior to trial. In support of his argument that jeopardy attached to the dismissed count, Soto relies upon constitutional principles of finality discussed in Supreme Court cases. Respondent relies upon case law from federal circuit courts, delineates the two approaches those courts have taken, and argues that, under either approach, jeopardy did not attach to the dismissed count in this case. Upon consideration of the parties' arguments and legal authority discussed below, the undersigned finds that jeopardy did not attach to the involuntary manslaughter count dismissed pursuant to the plea agreement prior to trial.

**B. Soto's Argument that Jeopardy Attached to the Involuntary Manslaughter Count based on Constitutional Principles of Finality is not Persuasive.**

Soto relies on constitutional principles of finality as the basis for his claim that jeopardy attached to the involuntary manslaughter count dismissed pursuant to the plea agreement prior to trial. He includes quotes from a number of cases to support his finality argument, Doc. No. 1, pp. 13-16; Doc. No. 16, pp. 14-19, but the facts and holdings of those cases do not warrant a finding that jeopardy attached to the dismissed involuntary manslaughter count in this case.

Soto cites *Jorn*, 400 U.S. at 479, for the proposition that the Double Jeopardy Clause "represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings." Doc. No. 1, p. 13; Doc. No. 16, p. 18. In *Jorn*, the district court aborted the trial after it had commenced due to concerns about whether the witnesses had been warned about making damaging admissions against themselves, and when the government sought to retry the defendant the district court refused on double jeopardy grounds. 400 U.S. at 473. The Supreme

8

Court affirmed, finding that jeopardy had attached to charges against the defendant because trial had commenced.  *Id*. at 480.  Here, trial had not commenced.  To say that there is a constitutional policy of finality for the defendant's benefit does not, alone, compel a finding that jeopardy attached to the dismissed involuntary manslaughter count.

Soto argues that the state "should not be permitted to get a second bite of the apple because it now claims to have found additional facts."  Doc. No. 1, pp. 13, 16 (citing *Burks v. United States*, 437 U.S. 1, 11 (1978)); Doc. No. 16, p. 14.  In *Burks*, the defendant was charged with robbing a bank with a dangerous weapon; his defense, at trial, was insanity.  *Id*. at 2.  Three expert witnesses testified on his behalf and concluded that he was incapable of conforming his conduct to the requirements of the law at the time of the offense.  *Id*. at 3.  In rebuttal, the government offered the testimony of two experts who gave equivocal testimony regarding Burks' mental state.  *Id*.  The jury found Burks guilty and he appealed.  The appellate court reversed, finding that there was insufficient evidence to support the verdict because the government had not rebutted Burks' proof with respect to the issue of insanity and criminal responsibility.  *Id*., at 3-4.  But it also remanded for the trial court to determine whether any new evidence submitted by the government could support a verdict and, if so, order a new trial.  *Id*. at 4.  The question before the Supreme Court was whether a defendant may be tried a second time after a reviewing court had determined that the evidence at the first trial was insufficient to sustain a jury verdict.  *Id*. at 5.  In answering no to that question, the Court explained,

> The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.[] This is central to the objective of the prohibition against successive trials. The Clause does not allow "the State . . . to make repeated attempts to convict an individual for an alleged offense," since "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."

*Id.* at 11 (quoting *Green v. United States*, 355 U.S. 184, 187 (1957) and citing *Serfass*, 420 U.S. at 387–388; *Jorn*, 400 U.S. at 479).  The Court found that the appellate court's reversal had amounted to a judgment of acquittal and stated, "Given the requirements for entry of a judgment of acquittal, the purposes of the Clause would be negated were we to afford the government an opportunity for the proverbial 'second bite at the apple.'"  *Id.* at 17.

*Burks* is similar to Soto's case in that additional evidence is involved in a second prosecution.  But the defining feature in *Burks* preventing a "second bite of the apple" was that the defendant had been acquitted.  Soto has not been acquitted (or convicted) of involuntary manslaughter.  There can be no second bite of the apple until there has been a first bite, and Soto has not shown that the state took its first bite when it dismissed the involuntary manslaughter count pursuant to a plea agreement prior to trial.  Soto's submission that the state's "second bite of the apple is attributable to its failure to properly investigate the case in 2006" (Doc. No. 16, pp. 16-18, 25-26) does not address that issue.

Soto cites *Brown v. Ohio*, 432 U.S. 161, 162 (1977) and *Rashad v. Burt*, 108 F.3d 677, 680 (6th Cir. 1997), for the concept that the state cannot avoid double jeopardy limitations by dividing a single crime into a series of temporal or spatial units.  Doc. No. 1, pp. 13, 15; Doc. No. 16, p. 14.  But there is nothing in the facts of this case to suggest that that is what the state is trying to do.  *Brown* involved a defendant who was charged with joyriding twice after a nine-day spree: one count on the first day (which he pled guilty to) and a second prosecution for one count on the last day.  The Court explained, "…the specification of different dates in the two charges on which Brown was convicted cannot alter the fact that he was placed twice in jeopardy for the same offense in violation of the Fifth and Fourteenth Amendments."  432 U.S. at 169-170.  *Rashad* involved two consecutive trials and convictions for violating the same state statute based

10

on drugs found in a house and a car at the same time and location; Rashad's acts were found to constitute a single transaction and a second prosecution violated double jeopardy.  108 F.3d at 680-681.  Neither *Brown* nor *Rashad* are applicable to the question presented here: did jeopardy attach to the dismissed involuntary manslaughter count.

Soto quotes *Hoag v. New Jersey*, 356 U.S. 464, 467 (1958), when he states, "The question in any given case is whether such a course [of successive prosecutions] has led to fundamental unfairness."  Doc. No. 1, p. 13; Doc. No. 16, p. 14.  *Hoag* involved a defendant who was tried for robbing three people at a tavern one night and found not guilty, then was tried for robbing a fourth person at the tavern on the same night and found guilty.  Hoag challenged his second trial and conviction as violating the Double Jeopardy Clause and the Supreme Court disagreed.  It stated that Hoag had not been twice put in jeopardy for the same crime; that the successive prosecution did not involve "an attempt to wear the accused out by a multitude of cases with accumulated trials"; and that the course of prosecutions had not led fundamental unfairness.  *Id*. at 466-468.  Soto does not explain how *Hoag* supports his position in this case and it is not clear how it would.

In *Green v. United States*, 355 U.S. 184 (1957), a jury had found Green guilty of arson and second degree murder but was silent on the charge of first degree murder.  Green appealed and his conviction was reversed and remanded for a new trial.  *Id*. at 186.  On remand, the prosecution charged him with first degree murder, the jury found him guilty, and he appealed, arguing that double jeopardy barred the second prosecution for first degree murder.  *Id*.  The Court agreed, holding that because Green had been "put to trial before a jury" with respect to the first degree murder charge at his first trial, the "second trial for first degree murder placed Green in jeopardy twice for the same offense in violation of the Constitution."  *Id*. at 190.  It was in that

11

context that the Court reiterated, "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity." *Id*. at 187.  Soto, quoting that passage in *Green*, asserts, "Most of the same interests undergirding the Double Jeopardy Clause as to jury verdicts, apply equally to guilty pleas."  Doc. No. 1, p. 14.  But he does not cite a guilty plea case in which a court held that that idea compelled a finding that jeopardy attached to a dismissed count pursuant to a plea agreement.  And, as respondent observes, it was Soto who walked into the Putnam County Sheriff's Office in 2016 and confessed to murdering his son, five years after he had been released from prison after having served his sentence for child endangering.  Doc. No. 17, p. 6.  Any embarrassment, expense, and ordeal created by the 2016 charges was not prompted by the state.

In *Jeffers v. United States*, 432 U.S. 137, 152 (1977), the Court stated, "although a defendant is normally entitled to have charges on a greater and a lesser offense resolved in one proceeding, there is no violation of the Double Jeopardy Clause when he elects to have the two offenses tried separately and persuades the trial court to honor his election."  Soto quotes that passage and points out that he did not elect to have charges against him brought in two different proceedings or oppose a government motion to consolidate.  Doc. No. 1, pp. 14-15; Doc. No. 16, p. 23.  That may be true, but those statements do not inform the question here.  *Jeffers* does not stand for the proposition that a defendant can be charged in two proceedings only if he elects to do so.

Soto also cites cases discussing guilty pleas.  Doc. No. 1, pp. 14-15.  Although these cases land closer to the mark, they still fall wide of it.  He cites *Florida v. Nixon*, 543 U.S. 175

(2004), a case that did not involve double jeopardy, in which the Court observed, "By entering a guilty plea, a defendant waives constitutional rights that inhere in a criminal trial, including the right to trial by jury, the protection against self-incrimination, and the right to confront one's accusers." *Id*. at 187 (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)).  In *Boykin*, also cited by Soto, the Court observed that a plea of guilty is "more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment," and held that a trial court must determine, on the record, "whether a guilty plea is voluntarily made."  395 U.S. at 242; Doc. No. 1, p. 14.  *Boykin* was not a double jeopardy case and Soto is not arguing that his guilty plea was not voluntary.  His reliance upon *United States v. Hecht*, 638 F.2d 651 (3d Cir. 1981), for the proposition that a defendant is deemed to be convicted, and jeopardy attaches, when a court accepts the defendant's guilty plea (Doc. No. 1, p. 14) is unhelpful for the same reason; it does not address whether jeopardy attaches to a count dismissed pursuant to a plea agreement.  *See Hecht*, 638 F.2d at 657 (finding that the district court had erroneously vacated the defendant's guilty plea on one count in a four-count indictment pursuant to a plea agreement; the Third Circuit reinstated the guilty plea to that one count and held that doing so did not violate the Double Jeopardy Clause).

Soto asserts that *Ohio v. Johnson*, 467 U.S. 493 (1984), strengthens his case.  Doc. No. 16, pp. 22-23.  *Johnson* involved a defendant who pled guilty, over the state's objection, to two lesser counts—involuntary manslaughter and grand theft—and then argued that the two remaining, greater counts—murder and aggravated robbery—should be dismissed on double jeopardy grounds.  The Supreme Court disagreed, explaining, "No interest of [Johnson] protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment."  *Id*. at 501.  Soto's assertion that, unlike *Johnson*,

he "did not [] attempt to deny the State the ability to prosecute him on the offense of involuntary manslaughter" (Doc. No. 16, p. 24) is nonsensical; the facts in *Johnson* do not translate in a meaningful way to the facts of Soto's case.

And in *Ricketts v. Adamson*, 483 U.S. 1, 3 (1987), the Court held that the Double Jeopardy Clause does not bars the prosecution of a defendant for first-degree murder following his breach of a plea agreement under which he had pled guilty to a lesser offense, had been sentenced, and had begun serving a term of imprisonment.  The plea agreement had stated that if the defendant refused to testify the agreement would be void and the original charge would be reinstated.  *Id*. at 9.  The Court concluded, "The parties could have struck a different bargain, but permitting the State to enforce the agreement the parties actually made does not violate the Double Jeopardy Clause."  *Id*. at 12.  Soto asserts that he has complied with his plea agreement (Doc. No. 16, p. 25), but, unlike the defendant in *Ricketts*, he was not obligated to perform any duties (such as testifying against codefendants) per his plea agreement and his plea agreement was not vacated as a result of a failure to perform those duties.[3]

Soto's statement that the state "abandoned the right to charge [him] with involuntary manslaughter, and any greater offense of involuntary manslaughter, when, through agreement, it obtained his plea of guilty to child endangering" (Doc. No. 1, p. 16) is not tethered to any legal authority.  Nor is his assertion that when he pled guilty to the child endangering count, he "had the right to finality with respect to additional charges in the death of his son."  Doc. No. 1, p. 16.

---

[3] Respondent submits that Soto is not entitled to seek habeas relief on a theory that the state breached the plea agreement.  Doc. No. 14, pp. 19-20 (explaining that such an argument is not ripe for review and the Ohio Supreme Court has not addressed whether an interlocutory appeal may be brought on that basis); *see also State v. Soto*, 2019-Ohio-4430, 139 N.E.3d 889, 894 (2020).  Soto appears to concede that he is not making such an argument, Doc. No. 16, p. 18, and his sole ground for relief in the petition does not assert a claim that the state breached the plea agreement.

14

He presents a hypothetical: if he had pled guilty to the involuntary manslaughter count instead of the child endangering count, the 2016 indictment charging him with murder would be barred by double jeopardy.  He argues that the application of the Double Jeopardy Clause "should not be decided by such unforeseen nuances."  Doc. No. 16, p. 19.  But Soto did not plead guilty to involuntary manslaughter, a first-degree felony; he pled guilty to child endangering, a third-degree felony.  The difference between those two crimes is not nuanced.

In short, Soto's recitation of constitutional principles of finality implicit in the Double Jeopardy Clause notwithstanding, he has not shown that jeopardy attached to the involuntary manslaughter count dismissed pursuant to a plea agreement prior to trial.

**B. Respondent's Circuit Court Cases Finding that Jeopardy does not Attach to a Count Dismissed Pursuant to a Plea Agreement Prior to Trial are Persuasive.**

Respondent cites federal circuit court cases that have answered the question presented here: whether jeopardy attaches to a dismissed count pursuant to a plea agreement prior to trial. He divides them into two types: (1) courts that take a categorical approach in guilty plea cases and (2) courts that take a fact-based approach to pretrial dismissals per *Serfass v. United States*, 420 U.S. 377 (1975).

**1. The Categorical Approach in Guilty Plea Cases**

The following federal circuit cases have found that jeopardy does not attach to a count that had been dismissed pursuant to a plea agreement prior to trial.

In *United States v. Green*, 139 F.3d 1002 (4th Cir. 1998), Green pled guilty to one count in a five-count indictment, the government dismissed the remaining counts, and the court sentenced him.  Months later, Green filed a motion claiming that his plea was invalid in light of intervening Supreme Court precedent.  The district court agreed and ordered Green released unless he was reindicted.  The government reindicted him on all the counts in the prior

15

indictment (plus one) and Green moved to dismiss the indictment on double jeopardy grounds. The Fourth Circuit stated, "The Double Jeopardy Clause does not preclude prosecution of the offenses to which Green did not plead guilty.  A jury was never impanelled to try these counts; the court never received evidence on these counts; Green was never acquitted of these counts; and Green was never sentenced for these counts.  'The hallmarks of double jeopardy are not present.'"  *Id*. at 1004 (quoting *United States v. Johnson*, 537 F.2d 1170, 1174 (4th Cir. 1976)).

In *United States v. Nyhuis*, 8 F.3d 731 (11th Cir. 1993), Nyhuis pled guilty to a continuing criminal enterprise count involving marijuana in a Michigan district court pursuant to a plea agreement in which the government agreed to dismissed the conspiracy count.  Later, Nyhuis was indicted in a Florida district court and charged with conspiracy involving cocaine. Both cases involved activity in Florida and Michigan and one overlapping codefendant.  The Eleventh Circuit was tasked with determining the interplay between the federal statutes at issue when deciding whether the Florida indictment violated the Double Jeopardy Clause.  *Id*. at 735. The court, in a footnoted, stated, "We may disregard the § 846 conspiracy charge in the Michigan indictment which was dismissed pursuant to Nyhuis's plea agreement because jeopardy did not attach to that dismissed charge."  *Id*. at 735 n.2.  In his Traverse, Soto argues that *Nyhuis* does not support Respondent's position because that case involved two different time periods and illegal acts committed in multiple states.  Doc. No. 16, p. 21.  That difference is immaterial; the point is that *Nyhuis* stated that jeopardy did not attach to the count dismissed pursuant to the plea agreement.

*United States v. Soto-Alvarez*, 958 F.2d 473 (1st Cir. 1992) is similar to *Nyhuis*: Soto-Alvarez pled guilty to two counts of a 7-count indictment involving drug possession and distribution in 1985 and in 1986 was charged with six counts in a second indictment and was

16

found guilty by a jury on all counts. The court, considering whether the second indictment violated double jeopardy principles, stated, "we only concern ourselves with the two charges to which the defendant pled guilty since jeopardy ordinarily does not attach to counts which are dismissed and on which no finding of guilt is made." *Id*. at 482 n.7 (citing *United States v. García-Rosa*, 876 F.2d 209, 235 & n. 21 (1st Cir. 1989) and cases cited therein).

In *United States v. Garner*, 32 F.3d 1305 (8th Cir. 1994), Garner was charged in state court with first degree robbery and armed criminal action. He pled guilty to a reduced charge of second degree robbery and the state dismissed the armed criminal action charge with prejudice. Later, he was charged in federal court with being a felon in possession of a firearm and, at trial, a jury found him guilty. On appeal, he argued that "the federal prosecution on the felon in possession of a firearm charge placed him in jeopardy for the second time on the same offense for which he was charged and pleaded guilty in state court." *Id*. at 1310. The Eight Circuit disagreed, stating, "it is well settled that the double jeopardy clause does not bar a federal prosecution of a defendant who had been prosecuted for the same acts in state court." *Id*. In a footnote, the court commented,

> Garner makes no argument that the state second-degree robbery charge to which he pleaded guilty contains the same elements as the federal charge for felon in possession of a firearm. It obviously does not. He argues only that the federal felon in possession of a firearm charge presents double jeopardy problems because of the state charge for armed criminal conduct that was dismissed with prejudice as part of the plea agreement. This argument is unpersuasive for a different reason: jeopardy never attached to the charges dismissed as part of plea agreement.

*Id*. at 1311 n.6 (citing *Nyhuis*, *Soto–Alvarez*, and *United States v. Vaughan*, 715 F.2d 1373, 1376–77 (9th Cir. 1983)). Soto's assertion that Garner is not on point because it involved state and federal prosecutions (Doc. No. 16, p. 22) fails to account for the court's statement cited above.

17

The only federal circuit court that has addressed this issue and came to the opposition conclusion is *United States v. Mintz*, 16 F.3d 1101 (10th Cir. 1994). In *Mintz*, the defendants were indicted in a Florida district court on three counts involving marijuana from Jamaica: conspiracy to import marijuana, importation of marijuana, and conspiracy to possess marijuana with intent to distribute. *Id*. at 1102. Pursuant to a plea agreement prior to trial, they pled guilty to conspiracy to import and the remaining two charges were dismissed with prejudice. *Id*. at 1102-03. The same day they pled guilty, they were indicted in a district court in Kansas on two counts involving marijuana harvested in Kansas: conspiracy to possess marijuana with intent to distribute and possession with intent to distribute more than 1,000 plants. *Id*. at 1103. The defendants argued that the Kansas charges should be dismissed on double jeopardy grounds because the Florida and Kansas activities were part of the same conspiracy. *Id*. The district court agreed with respect to count 1 (conspiracy to possess with intent to distribute) and dismissed that count. *Id*. On appeal, the Tenth Circuit applied the test in *Blockburger v. United States*, 284 U.S. 299 (1932) and Tenth Circuit case law regarding a double jeopardy analysis in conspiracy cases. *Id*. at 1104-1106. It concluded,

> We find that the district court did not err in dismissing Count 1 because the evidence supports a finding of one conspiracy. Since Defendants were indicted for the same conspiracy in Florida and this charge was dismissed with prejudice, to subject Defendants to a trial on the same charge in Kansas would violate the Double Jeopardy Clause of the Constitution.

*Id*. at 1106.

But in *United States v. Angilau*, 717 F.3d 781, 787 n.1 (10th Cir. 2013), the Tenth Circuit stated,

> …. In *Mintz* we stated, without discussion, that when a prior drug-conspiracy charge against defendants had been dismissed with prejudice before trial, "to subject Defendants to a trial on the same charge in Kansas would violate the Double Jeopardy Clause of the Constitution." *Id*. at 1106….But *Mintz* appears to be in tension with other decisions of

18

this court, both earlier, *see United States v. King*, 581 F.2d 800, 801 (10th Cir.1978) (jeopardy did not attach to district court's pretrial dismissal of criminal information on defendants' motion, because the dismissal occurred "before the trier of fact commenced to take evidence"), and later, *see United States v. Marchese*, 46 F.3d 1020, 1022–23 (10th Cir.1995) (jeopardy did not attach to dismissal of indictment on defendants' motion because district court had not yet begun to receive evidence relevant to guilt or innocence). *See also United States v. Dionisio*, 415 F.Supp.2d 191, 196–97 (E.D.N.Y.2006) (rejecting *Mintz*)…

*Id.*

Thus, four federal circuit courts have found that jeopardy does not attach to a count dismissed pursuant to a plea agreement prior to trial as a categorical rule and one circuit court has found that jeopardy does attach.[4]  Taken as a whole, the undersigned finds that the former cases are more persuasive.

### 2. The *Serfass* Approach in Pretrial Dismissal Cases

Respondent cites federal circuit cases that applied the approach detailed in *Serfass v. United States*, 420 U.S. 377 (1975), when holding that jeopardy does not attach to a count dismissed pursuant to a plea agreement prior to trial.  Doc. No. 14, p. 17.

In *Serfass*, the Court considered whether jeopardy had attached to an indictment charging the defendant with failing to report for military service that the district court had dismissed prior to trial.  420 U.S. at 379.  Serfass argued that jeopardy had attached because the district court had examined evidence in the record and made a legal ruling that was the functional equivalent to an

---

[4] Respondent also cites *United States v. Baggett*, 901 F.2d 1546, 1550 (11th Cir. 1990).  Doc. No. 14, p. 17.  *Baggett* is not on point because it involved dismissed counts pursuant to a guilty plea that was subsequently withdrawn, and the court held that the withdrawn plea put both parties back in the position they occupied before the plea.

Soto cites *People v. Holz*, 148 N.E.3d 513 (NY 2020), which considered whether a defendant who pled guilty to a count of burglary of a laptop and the other count of burglary of jewelry was dismissed pursuant to a plea agreement could appeal when his plea agreement was conditional upon his appealing the trial court's denial of his motion to suppress the jewelry, rather than the laptop.  The court interpreted the relevant New York statute regarding suppression orders, noted confusion in the record below regarding which count the defendant had pled guilty to— laptop or jewelry, identical crimes— and held that the defendant could appeal because, under the statute, both crimes were satisfied by the plea agreement.  *Id.* at 516-517.  The court also stated, "a count satisfied by a guilty plea bears the double jeopardy consequences of a judgment of conviction. The judgment in this case prevents the People from prosecuting defendant again for the [jewelry] burglary, even though defendant did not plead to that count."  *Id.* at 518.

acquittal.  *Id*. at 389-390.  The Court rejected Serfass' argument, stating, "Under our cases jeopardy had not yet attached when the District Court granted petitioner's motion to dismiss the indictment.  Petitioner was not then, nor has he ever been, 'put to trial before the trier of facts.'" *Id*. at 389.  The Court rejected Serfass' second argument, too, that because the because the district court's ruling was based on "evidentiary facts outside of the indictment, which facts would constitute a defense on the merits at trial," it was the "'functional equivalent of an acquittal on the merits' and 'constructively jeopardy had attached.'"  *Id*. at 390.  The Court explained,

> It is true that we have disparaged 'rigid, mechanical' rules in the interpretation of the Double Jeopardy Clause. *Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973). However, we also observed in that case that 'the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial.' *Ibid. Cf. United States v. Sisson*, 399 U.S., at 303, 90 S.Ct., at 2137. Implicit in the latter statement is the premise that the 'constitutional policies underpinning the Fifth Amendment's guarantee' are not implicated before that point in the proceedings at which 'jeopardy attaches.' *United States v. Jorn*, 400 U.S., at 480, 94 S.Ct., at 554. As we have noted above, the Court has consistently adhered to the view that jeopardy does not attach until a defendant is 'put to trial before the trier of the facts, whether the trier be a jury or a judge.' *Id*., at 479, 91 S.Ct., at 554. This is by no means a mere technicality, nor is it a 'rigid, mechanical' rule. It is, of course, like most legal rules, an attempt to impart content to an abstraction.
>
> When a criminal prosecution is terminated prior to trial, an accused is often spared much of the expense, delay, strain, and embarrassment which attend a trial. *See Green v. United States*, 355 U.S., at 187—188, 78 S.Ct., at 223—224. *United States v. Jorn, supra*, 400 U.S., at 479, 91 S.Ct., at 554. Although an accused may raise defenses or objections before trial which are 'capable of determination without the trial of the general issue,' Fed.Rule Crim.Proc. 12(b)(1), and although he must raise certain other defenses or objections before trial, Fed.Rule Crim.Proc. 12(b)(2), in neither case is he 'subjected to the hazards of trial and possible conviction.' *Green v. United States, supra*, 355 U.S., at 187, 78 S.Ct., at 223. Moreover, in neither case would an appeal by the United States 'allow the prosecutor to seek to persuade a second trier of fact of the defendant's guilt after having failed with the first.' *United States v. Wilson*, 420 U.S., at 352, 95 S.Ct., at 1026. *See United States v. Jorn, supra*, 400 U.S., at 484, 91 S.Ct., at 556. Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.' *Kepner v. United States*, 195 U.S., at 133, 24 S.Ct., at 806. *See Price v. Georgia*, 398 U.S., at 329, 90 S.Ct., at 1761. Without risk of a determination

of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.

*Id*. at 390-392.

Soto attempts to distinguish *Serfass* from his case and submits, "The factual posture would have been much different in *Serfass* if the government moved to dismiss or joined in the dismissal." Doc. No. 16, p. 20. But he does not explain how those hypothetical facts would have altered the Court's conclusion that jeopardy had not attached when the district court dismissed the indictment because Serfass had not been "put to trial before the trier of facts." *Serfass*, 420 U.S. at 389. Nor does he explain how the *Serfass* approach to the facts of his case would warrant a different result.

In *United States v. Dionisio*, 503 F.3d 78 (2d Cir. 2007), the Second Circuit relied on *Serfass* when it considered under what circumstances, if any, jeopardy would attach to a charge the district court dismissed with prejudice pursuant to a plea agreement prior to trial. *Id*. at 79. Dionisio had been charged under the Racketeer Influenced and Corrupt Organizations Act ("RICO") in 2001 in the Eastern District of New York with counts of substantive racketeering, racketeering conspiracy, and other offenses in connection with his part in organized crime family activities that took place from 1993 to 2001. Pursuant to a plea agreement, he pled guilty to one count of substantive racketeering and the government dismissed with prejudice the conspiracy and other counts. *Id*. at 79-80. In 2004, Dionisio was indicted in the Eastern District of New York on a count of racketeering conspiracy in connection with the same crime family that took place from 1991 to 1999. *Id*. at 80. Dionisio moved to dismiss the 2004 indictment as a violation of the Double Jeopardy Clause because the conspiracy count was based on the same conduct as the 2001 conspiracy count that was dismissed with prejudice as part of his plea agreement. *Id*. The Second Circuit held that jeopardy had not attached to the dismissed counts,

21

explaining that there was nothing in the record to suggest that the dismissal "entailed a resolution of any factual elements that went to the merits of the charges against Dionisio" and no "process that put Dionisio at any risk of conviction."  *Id*. at 89.

And in *United States v. Vaughan*, 715 F.2d 1373, 1376 (9th Cir. 1983), the Ninth Circuit, citing *Serfass* and Ninth Circuit cases, held that jeopardy did not attach to conspiracy charges dismissed pursuant to a pretrial plea agreement and did not bar a second prosecution for conspiracy charges stemming from the same conspiracy as the first because the issue of Vaughan's guilt or innocence "never came before a trier of fact."  The court explained,

> Vaughan pleaded guilty shortly after arraignment in the course of pretrial proceedings to a superseding information charging him with simple possession of marijuana … On this basis, the 1977 indictment containing the first conspiracy charges was dismissed.  No jurors had been selected nor any evidence pertaining to guilt or innocence of the conspiracy charges adduced. The record does not indicate that the dismissal in any way implied acquittal on those charges.  *Cf. United States v. Dahlstrum*, 655 F.2d 971, 974 (9th Cir.1981), *cert. denied*, 455 U.S. 928, 102 S.Ct. 1293, 71 L.Ed.2d 472 (1982) (dismissal is not equivalent to acquittal even if dismissal is "with prejudice"). On this record, we conclude that Vaughan was never placed in jeopardy in connection with the conspiracies charged in the 1977 indictment.

*Id*. at 1376-1377.

Here, Soto pled guilty to child endangering prior to trial and the involuntary manslaughter count was dismissed.  The issue of Soto's guilt or innocence of involuntary manslaughter never came before a trier of fact.[5]  *Id*. at 1376; *Serfass*, 420 U.S. at 389.  Nothing

---

[5] In determining whether Soto faced a risk of determination of guilt, the dissenting Ohio Supreme Court justice wrote,

> [] Soto faced exposure to the risk of convictions for both involuntary manslaughter and child endangering as charged in the indictment. In exchange for an agreement to plead guilty to child endangering, the state agreed to drop the involuntary-manslaughter charge. But for the state's agreement to drop the involuntary-manslaughter charge, Soto unquestionably faced the risk of a determination of guilt on the involuntary-manslaughter charge. Accepting Soto's plea, the trial court conclusively determined his criminal culpability for purposes of double jeopardy.
> 
> &ast;&ast;&ast;
> 
> Thus, while Soto was not convicted of involuntary manslaughter, he would have been in jeopardy of being tried and convicted of involuntary manslaughter but for the plea agreement resulting in his conviction and sentence for the predicate offense of child endangering….

22

in the record suggests that the dismissal "entailed a resolution of any factual elements that went to the merits of the charges against [Soto]" or a "process that put [Soto] at any risk of conviction." *Dionisio*, 503 F.3d at 89.

Soto argues that an examination of the "facts unique to his case" defines the term "finality" and advances those facts: his 2006 guilty plea to child endangering; the state's dismissal of the involuntary manslaughter count; the five-year sentence that the trial court imposed; and "his serving the entire five years of that sentence." Doc. No. 16, p. 14. But those facts are not unique. In the circuit cases described above the defendant pled guilty to a charge and a charge was dismissed. The fact that Soto has already served his sentence for the crime he pled guilty to is immaterial; Soto provides no legal authority for his suggestion that he can escape a prosecution on a dismissed count because he served the full sentence on the count he pled guilty to.

He contends that, at the conclusion of his 2006 plea hearing, he had a "reasonable expectation of finality that the State was barred from instituting a second round of charges" because the "State neither orally preserved a right to institute a second round of charges against [him] at the plea and sentencing hearing nor did it preserve such a right in the written plea agreement." Doc. No. 16, p. 15. But whether the state preserved a right to institute a charge against him is not relevant to the question courts ask when considering whether jeopardy attached: whether he was "put to trial before the trier of the facts." *Serfass*, 420 U.S. at 391. "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor

---

*Soto*, 2019-Ohio-4430, ¶¶42, 54; 139 N.E.3d at 899, 901. That conclusion—Soto faced a determination of guilt but for the state's agreement to drop the involuntary manslaughter count—is premised upon removing the plea agreement from the facts of this case. But the plea agreement is the main obstacle; it cannot be removed. The fact remains that the parties entered into a plea agreement, the state dropped the involuntary manslaughter count, and, as a result, Soto did not face a determination of guilt on that count.

23

further prosecution constitutes double jeopardy." *Id.* at 391-392.  Here, Soto was not "put to trial" on the involuntary manslaughter count; therefore, jeopardy did not attach. *Id.*[6]

Soto's recitation of statements that the trial court made at his sentencing hearing and attendant arguments regarding finality are also unavailing.  He asserts that the trial court judge "made it clear to Mr. Soto that he did not believe either of Mr. Soto's statements to the investigating officers" when the court stated, "Well, I simply don't believe that version of what happened."  Doc. No. 16, p. 15.  The judge told Soto that "the physical evidence was not consistent with either of his statements and that the investigating officers had obtained written statements from two of his associates that supported more serious charges." *Id.*  Soto concludes, "These statements would have led [Soto] to conclude that the State chose to ignore the evidence supporting more serious charges in favor of obtaining a 'sure thing,' a conviction on the lesser charge via guilty plea." *Id.*  Soto's argument fails for two reasons.  First, the trial court accepted Soto's guilty plea to child endangering on July 6, 2006 with no reservations or commentary and the involuntary manslaughter count was dismissed.  Doc. No. 12-1, pp. 9-18. *See United States v. Bearden*, 274 F.3d 1031, 1037-38 (6th Cir. 2001) ("We hold that jeopardy attaches only when the district court accepts the defendant's guilty or nolo contendere plea.").  Those operative facts did not change despite the trial court's comments at sentencing on July 26, 2006.  And the trial court's comments at sentencing could not have "led [Soto] to conclude that the State chose to ignore the evidence supporting more serious charges," as Soto contends, because by that time Soto had already pled guilty to child endangering and the trial court had accepted his plea.

---

[6]  To the extent Soto is arguing that the state breached the plea agreement, that issue is not before this Court. *See* note 3, *supra*. *See also Vaughan*, 715 F.2d at 1377, n.1 ("In an analogous case, … we observed that 'breach of plea agreement' may serve as a more viable theory for dismissal of an indictment than does double jeopardy in circumstances similar to these.  However, Vaughan did not raise this argument and we decline to address it *sua sponte*.")(citations omitted).  Moreover, the plea agreement did not state that the involuntary manslaughter count was dismissed with prejudice.  Doc. No. 12-1, p. 22.

Comments made at sentencing that may lead a defendant to conclude what the state chose to do does not resurrect a dismissed count or retroactively attach jeopardy to it.

Second, the trial court accepted Soto's plea of guilty to the child endangering count (Doc. No. 12-1, p. 17) and sentenced him to serve five years in prison for that crime (Doc. No. 12-1, pp. 25, 50), the maximum prison sentence permitted (Doc. No. 12-1, p. 20).  There is nothing in the record indicating that the trial court "gave every impression that the imposition of the five-year sentence represented the final resolution of all charges" as Soto asserts.  Doc. No. 16, p. 18. Nor did the court, through its comments at sentencing after it had examined the evidence, make a legal ruling that was the functional equivalent of an acquittal or a conviction of involuntary manslaughter.  And even if it had, such a declaration by the trial court would have not meant that jeopardy attached to the dismissed involuntary manslaughter count because *Serfass* holds otherwise.  420 U.S. at 390.

Finally, Soto's reliance upon *Martinez v. Illinois*, 572 U.S. 833 (2014), is misplaced (Doc. No. 16, p. 26); rather than supporting his position, *Martinez* cuts against it.  *Martinez*, discussing *Serfass*, stated, "*Serfass* does not apply a functional approach to the determination of when jeopardy has attached.  As to that question, it states the same bright-line rule as every other case: Jeopardy attaches when a defendant is put to trial, and in a jury trial, that is when a jury is empaneled and sworn…Indeed, *Serfass* explicitly rejects a functional approach to the question whether jeopardy has attached."  *Martinez*, 572 U.S. at 839–40 (cleaned up) (rejecting the Illinois Supreme Courts' functional approach and conclusion when it determined that jeopardy had not attached to charges dismissed after the jury was empaneled).  *Martinez*' pointed reminder counsels against adopting Soto's approach advanced in his briefs because he invites the court to take a functional approach to when jeopardy attached to a count dismissed pursuant to a

25

plea agreement prior to trial.  He asks the court to consider comments the trial court made at sentencing that had no legal effect and to delve into perceptions he may have experienced regarding the state's intentions.  That approach is not endorsed by the Supreme Court or federal circuits and the undersigned declines to adopt it.

For all the reasons explained above, the undersigned finds that jeopardy did not attach to the involuntary manslaughter count that was dismissed pursuant to a plea agreement prior to trial in 2006.  Therefore, the state's 2016 murder charges do not violate the Double Jeopardy Clause and Soto is not entitled to habeas relief.

## IV. Conclusion

For all the reasons set forth above, it is recommended that the Petition be denied.

Date: September 15, 2021                         *s/ Jonathan Greenberg*
                                                Jonathan D. Greenberg
                                                United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**