UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TRAVIS SOTO, | CASE NO. 3:21-cv-167 |
| Petitioner, | JUDGE DONALD C. NUGENT |
| v. | |
| SHERIFF BRIAN SIEKFER, | |
| Respondent. | ORDER ADOPTING REPORT AND RECOMMENDATION |

This matter comes before the Court upon the Report and Recommendation of Magistrate Judge Jonathan D. Greenberg, addressing Petitioner Travis Soto's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 18.) Petitioner timely filed objections to the Report and Recommendation, and Respondent filed a Response. (ECF Nos. 20, 21.) Upon a *de novo* review of the portions of the Report and Recommendations to which Petitioner objects, *see* Fed. R. Civ. P. 72(b), the Court finds that the conclusions of the Report and Recommendations should be ADOPTED. Mr. Soto's petition is DENIED.

I.

In 2006, the State of Ohio charged Petitioner with involuntary manslaughter and child endangerment in connection with the death of his two-year-old son. (ECF No. 18, PageID.735.) Mr. Soto initially claimed that his son died in an ATV accident. (*Id.* at PageID.734–35.) Mr. Soto entered into a plea agreement with the state, by which Mr. Soto agreed to plead guilty to child endangerment and the state agreed to dismiss the

involuntary manslaughter charge. (*Id.* at PageID.735.) The trial court accepted the plea and sentenced Mr. Soto to five years in prison; he was released in 2011. (*Id.*)

In 2016, Mr. Soto voluntarily appeared at the Putnam County Sheriff's Department. (*Id.* at PageID.736.) He confessed to lying about the ATV accident. (*Id.*) Mr. Soto stated that he beat his son to death and staged evidence to support his story about an ATV accident. (*Id.*) He made this unsolicited confession because he became religious while incarcerated. (*Id.*)

The state then charged Mr. Soto with aggravated murder, murder, felonious assault, kidnapping, and tampering with evidence. (*Id.*) The trial court denied Mr. Soto's motion to dismiss the indictment on double jeopardy grounds. (*Id.*) Mr. Soto took an interlocutory appeal. (*Id.*) Petitioner initially succeeded at the intermediate state appellate court, but the Ohio Supreme Court reversed the Ohio Court of Appeals, concluding that double jeopardy did not bar the prosecution. (*Id.* at PageID.737–38.) The Supreme Court of the United States denied Petitioner's request for a writ of certiorari. (*Id.* at PageID.738.) Mr. Soto is being held in detention at the Putnam County Jail while awaiting trial. (*Id.* at PageID.734.)

Petitioner filed this request for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (*Id.* at PageID.738.) Mr. Soto claims that his pretrial detention violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. (*Id.*)

The Magistrate Judge determined that Petitioner's request should be denied. (*Id.* at PageID.759.) The Magistrate Judge noted that the Double Jeopardy Clause only bars a second prosecution if (1) the defendant was already prosecuted for that crime (or a lesser included offense); and, (2) jeopardy attached in the first prosecution. (*Id.* at PageID.739–40.)

2

The Magistrate Judge noted that jeopardy did attach to the child endangerment charge when Petitioner pleaded guilty to it in 2006. (*Id.* at 740.) But the Ohio Supreme Court held that child endangerment was not a lesser included offense of murder or aggravated murder, so the child endangerment conviction does not bar the current prosecution. *State v. Soto*, 2019-Ohio-4430, 158 Ohio St.3d 44, 48. As the Magistrate Judge noted, federal courts are bound to accept such an interpretation of state law by the state's high court. (ECF No. 18, PageID.740 n.2 (citing *Bradshaw v. Richey*, 546 U.S. 74, 78 (2005)).)

Involuntary manslaughter, however, *is* a lesser included offense of murder. (*Id.* at PageID.740 (citing *State v. Thomas*, 40 Ohio St.3d 213, 215–16 (1988)).) Thus, the Magistrate Judge determined that double jeopardy is implicated if jeopardy attached to the 2006 involuntary manslaughter charge. (*Id.*)

The issue is whether jeopardy attaches to a charge that is dismissed pursuant to a plea agreement when a defendant pleads guilty to another charge in the indictment. The Magistrate Judge noted the lack of binding authority on this issue. (*Id.* at PageID.741.) The Magistrate Judge concluded that Petitioner failed to demonstrate that jeopardy attached to the dismissed involuntary manslaughter charge. (*Id.*) The Magistrate Judge then noted that most circuits have adopted one of two approaches. (*Id.* at PageID.748.) Some federal circuits categorically hold that jeopardy does not attach to charges dismissed pursuant to a guilty plea. (*Id.*) Other circuits hold that jeopardy only attaches if the charges were dismissed after coming before the finder of fact in some manner. (*Id.* at PageID.752.) Under either approach, Mr. Soto's double jeopardy challenge fails.

Petitioner objects on two grounds. First, Petitioner objects to the Magistrate Judge's conclusion that Petitioner has not shown that jeopardy attaches to charges

3

dismissed as part of a plea agreement. Second, Petitioner objects to the Magistrate Judge's characterization and application of law in other federal circuits.

## II.

Petitioner first argues that the Magistrate Judge took a case-by-case approach that failed to recognize the "doctrine of finality" expressed throughout the Supreme Court's double jeopardy jurisprudence. (ECF No. 20, PageID.2–3.) But the Magistrate Judge did recognize and address the "constitutional policy of finality." (ECF No. 18, PageID.9, 15.) As the Magistrate Judge correctly noted, finality is not the ultimate consideration. This Court cannot ignore the Supreme Court's instruction that double jeopardy is not implicated unless jeopardy attached in the first proceeding. *United States v. Martin Linen Supply Co*, 430 U.S. 564, 569 (1977) ("The protections afforded by the Clause are implicated only when the accused has actually been placed in jeopardy.").

Mr. Soto takes issue with the Magistrate Judge's construction of *United States v. Jorn*. 400 U.S. 470 (1971). Mr. Soto argues that the Magistrate Judge distinguished *Jorn* because there the trial court dismissed the initial charges, whereas here the prosecution voluntarily dismissed the involuntary manslaughter charge. But that is not the distinction that the Magistrate Judge drew. Instead, the Magistrate Judge noted that the charges in *Jorn* were dismissed after "trial had commenced." (ECF No. 18, PageID.742 (citing *Jorn*, 400 U.S. at 480).) This distinction is critical because jeopardy attaches once a jury is empaneled. *Serfass v. United States*, 420 U.S. 377, 388 (1975). Here, the involuntary manslaughter charge was dismissed before trial, so *Jorn* is not instructive.

4

Petitioner next argues that the Magistrate Judge misapplied the prohibition against "repeated attempts to convict an individual for an alleged defense." *Burks v. United States*, 437 U.S. 1, 11 (1978) (quoting *Green v. United States*, 355 U.S. 184, 187 (1957)). Mr. Soto continues his quotation of *Burks*, "The constitutional prohibition against double jeopardy was designed to protect an individual from being **subjected to the hazards of trial** and possible conviction more than once for an alleged offense." *Id.* (quoting *Green*, 355 U.S. at 187) (emphasis added). But Mr. Soto's argument fails on its own terms. He was never "subjected to the hazards of trial" on the manslaughter charge. As the Magistrate Judge noted, unlike Mr. Soto's, Mr. Burks's case went to trial. (ECF No. 18, PageID.742 (citing *Burks*, 437 U.S. at 2–3).)

Mr. Soto also argues that the Magistrate Judge failed to give effect to *Brown v. Ohio*, which prohibits "dividing **a single crime** into a series of temporal or spatial units." 432 U.S 161, 169 (1977) (emphasis added). Again, the dispositive language is contained within Petitioner's own quotation: "a single crime." *Id.* As the Magistrate Judge noted, the defendant in *Brown* stole a car for nine days; the state obtained separate convictions for joyriding and auto theft concerning two different days of the nine-day period. *Id.* at 162–64. The Court applied the *Blockburger* test and held that the two offenses "constitute the same statutory offense within the meaning of the Double Jeopardy Clause." *Id.* at 168 (internal quotations omitted). *Brown* concerns spatial or temporal divisions of a "single crime," not *multiple* crimes committed during a single act—such as child endangerment and murder. *See Soto*, 158 Ohio St.3d at 48 (holding that child endangerment and murder are separate statutory offenses). And *Brown*, which concerned two separate convictions, speaks only to spatial or temporal divisions to which jeopardy attaches. As the Magistrate Judge correctly noted, *Brown* says

5

nothing about whether jeopardy attached to a previous charge that was dismissed as part of a plea agreement.

In his discussion of *Brown* and elsewhere, Mr. Soto argues that the State had all the evidence necessary to bring a murder charge in 2006. In fact, Mr. Soto argues, the trial judge cited much of this evidence in Mr. Soto's 2006 sentencing hearing. But even if this is true, Petitioner has not shown why the State's delay in bringing charges would raise constitutional concerns. The Double Jeopardy Clause prohibits successive prosecution, not delayed prosecution, which reinforces the Magistrate Judge's conclusion that the relevant question is whether jeopardy attached to the dismissed involuntary manslaughter charge. Whether the state *could* have subjected Petitioner to the hazards of trial in 2006 is a different inquiry from whether it *did*.

Petitioner argues that the Magistrate Judge did not properly apply *Hoag v. New Jersey*, which suggested that a state could not "attempt 'to wear the accused out by a multitude of cases with **accumulated trials**.'" 356 U.S. 464, 467 (emphasis added) (quoting *Palko v. Connecticut*, 302 U.S. 319, 328 (1937), *overruled by Benton v. Maryland*, 395 U.S. 784 (1969)), *overruled by Ashe v. Swenson*, 397 U.S. 436 (1970). Mr. Soto's argument is again foreclosed by his own quotation, which refers to accumulated *trials*. Mr. Soto has never gone to trial for murder (or any lesser included offenses), so there cannot be accumulated trials.

But Mr. Soto continues his *Hoag* argument, claiming that it would be "fundamentally unfair[ ]" to "prosecute Mr. Soto for the same events involving the same victim at the same time and place after he has served a prison sentence for this crime." (ECF No. 20, PageID.771.) Petitioner argues that successive prosecutions violate the Double Jeopardy Clause whenever they involve the same victim, time, and place. This is

6

an entirely novel argument, and it runs completely counter to his own authority of *Brown*, which clarifies that the relevant consideration is not the victim, time, or place, but rather the statutory elements of the crimes. 432 U.S. at 166 ("This test emphasizes the elements of the two crimes" and may be "satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." (internal quotations omitted)). Mr. Soto only "served a prison sentence" for child endangerment, which is not the same crime as murder, regardless of the overlap in victim, time, or place. *See Soto*, 158 Ohio St.3d at 48 (holding that child endangerment and murder are separate statutory offenses).

  Petitioner argues that the Magistrate Judge missed a key similarity between this case and *Green v. United States*. 355 U.S. 184 (1957). In *Green*, the defendant was charged with both first-degree and second-degree murder. *Id*. at 185–86. The jury returned a verdict of guilty as to second-degree murder and did not return a verdict as to first-degree murder. *Id*. After the trial court accepted the verdict, the government again sought a conviction on the first-degree murder charge. *Id*. The Court held that this violated the Double Jeopardy Clause. *Id*. at 198. Petitioner argues that, just like the jury in *Green*, the trial court here "did not rule on the more serious offense of involuntary manslaughter." (ECF No. 20, PageID.771.) But the determinative factor in *Green* was not merely that the government brought a charge but eventually failed to obtain a verdict. Instead, just like the Magistrate Judge, the Court focused on the attachment of jeopardy. *See Green*, 355 U.S. at 188 ("[A] defendant is placed in jeopardy once he is put to trial before a jury . . . ."). Mr. Soto was never "put to trial before a jury" for murder or its analogues.

7

Petitioner takes issue with the Magistrate Judge's suggestion that "[a]ny embarrassment, expense, and ordeal created by the 2016 charges" was "prompted" by Soto's decision to confess, not the State. (ECF No. 20, PageID.771; ECF No. 18, PageID.745.) In Mr. Soto's view, the ordeal was caused by the State's decision to charge him with a crime in 2016. But the source of the embarrassment and expense is irrelevant here. Repeat embarrassment, expense, and ordeal only implicate constitutional concerns when the first round of embarrassment advances to such a point that jeopardy attaches.

Petitioner suggests that the Magistrate Judge failed to recognize that protection against double jeopardy is not among the rights typically waived when a defendant pleads guilty. *Cf. Boykin v. Alabama*, 395 U.S. 238 (1969); *Florida v. Nixon*, 543 U.S. 175 (2004); *United States v. Hecht*, 638 F.2d 651 (3d Cir. 1981). But the Magistrate Judge did not overlook this argument—it is simply not determinative. The question is not whether Mr. Soto waived his double jeopardy rights when he pleaded guilty to child endangerment. The question is whether the double jeopardy right is implicated at all, which can only be if jeopardy attached to the dismissed involuntary manslaughter charge.

Petitioner's discussion of *Ohio v. Johnson* also misses the mark. 467 U.S. 493 (1984). In *Johnson*, the defendant was charged with involuntary manslaughter, murder, grand theft, and aggravated robbery. *Id.* at 494–96. Over the state's objection, he pleaded guilty to involuntary manslaughter and grand theft. *Id.* He then argued that the murder and aggravated robbery charges should be dismissed on double jeopardy grounds because involuntary manslaughter and grand theft were lesser included offenses, respectively. *Id.* The Court held that there was no double jeopardy violation. *Id.*

8

at 502. Petitioner argues that, unlike the prosecution in *Johnson*, the State did not object to Mr. Soto's guilty plea and in fact encouraged it. But the only reason that Double Jeopardy was implicated at all in *Johnson* was because the defendant pleaded guilty to lesser offenses contained within the remaining charges. Here, Mr. Soto only pleaded guilty to child endangerment, which is not a lesser offense contained within any of the 2016 charges. The State did not need to object in order to preserve its right to bring additional charges against Mr. Soto because the 2016 charges are different crimes.

Petitioner argues that the Magistrate Judge misapplied *Ricketts v. Adamson*. 483 U.S. 1 (1987). In *Ricketts*, the Court allowed re-prosecution of a charge originally dismissed as part of a plea deal because, after conviction, the defendant breached the terms of the agreement. *Id.* at 3–8. Because Mr. Soto complied with his obligations under the plea agreement, he argues that he cannot be re-prosecuted for the same crime as the dismissed involuntary manslaughter charge. But this argument misapprehends *Ricketts*, which applied the same attachment analysis as the Magistrate Judge. In *Ricketts*, the defendant pleaded guilty to second-degree murder and the state agreed to dismiss a first-degree murder charge. *Id.* at 3. Jeopardy only attached to "his plea of guilty to second-degree murder," but this would ordinarily preclude reinstatement of the first-degree murder charge because one is a lesser included offense of the other. *Id.* at 8. However, the *Ricketts* Court concluded that "breach of the plea agreement . . . removed the double jeopardy bar." *Id.* at 8. *Ricketts* is an *exception* to double jeopardy protection. Here, there is no double jeopardy bar to be removed. The double jeopardy bar in *Ricketts* did not merely arise because the state reinstated a dismissed charge—it arose because the state reinstated a "greater charge" of the "lesser included offense" to

9

which the defendant already pleaded guilty. *Id.* at 8. Mr. Soto only pleaded guilty to child endangerment, which is not a lesser included offense of murder.

The Magistrate Judge persuasively noted that Mr. Soto failed to demonstrate that his pending murder prosecution violates the Double Jeopardy Clause. Petitioner's first objection is overruled.

### III.

Petitioner's second objection is that the Magistrate Judge incorrectly surveyed and applied the law of other federal circuits. The Magistrate Judge noted two differing, predominant approaches to whether jeopardy attaches to charges dismissed pursuant to guilty pleas.

### A. **The Categorical Approach**

As the Magistrate Judge noted, several federal circuits, including the Eleventh and First, categorically hold that jeopardy does not attach to charges dismissed pursuant to a guilty plea. (ECF No. 18, PageID.748–50 (citing *United States v. Nyhuis*, 8 F.3d 731, 735 n.2 (11th Cir. 1993) (disregarding, for double jeopardy purposes, a charge "which was dismissed pursuant to [a] plea agreement because jeopardy did not attach to that dismissed charge") and *United States v. Soto-Alvarez*, 958 F.2d 473, 482 n.7 (1st Cir. 1992) (same)).)

Petitioner critiques the Magistrate Judge's reference to *United States v. Green*. 139 F.3d 1002 (4th Cir. 1998). Mr. Soto argues that because the defendant in *Green* withdrew his plea, no fundamental unfairness occurred when the government reinstated charges dismissed under a plea agreement. Contrarily, Mr. Soto submits that

10

fundamental unfairness *will* occur if he were forced to stand trial for his son's murder, because Mr. Soto did not withdraw his 2006 plea. But "fundamental unfairness" was not the reason for decision in *Green*. Instead, the court applied a typical attachment approach, holding that "[t]he Double Jeopardy Clause does not preclude prosecution of the offenses to which Green did not plead guilty. A jury was never impaneled to try these counts. . . ." *Id.* at 1004. This logic is equally applicable regardless of whether the defendant withdraws his guilty plea.

Mr. Soto also critiques the Magistrate Judge's reference to *United States v. Garner*, 32 F.3d 1305, 1311 n.6 (8th Cir. 1994), as "the quintessential example of dicta." (ECF No. 20, PageID.775.) First, one might characterize the Fourth Circuit's holding not as dictum but as an "independent and equally sufficient conclusion." *See Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019) (emphasis removed). Regardless, this Court may follow "well-reasoned and persuasive" dicta. *PDV Midwest Refin., L.L.C. v. Armada Oil & Gas Co.*, 305 F.3d 498, 510 (6th Cir. 2002). The *Garner* court, like the Magistrate Judge, cited *Nyhuis* and *Soto-Alvarez*. *Garner*, 32 F.3d at 1311 n.6. Mr. Soto did not object to the applicability of either of these cases.

The Magistrate Judge noted that in one case, *United States v. Mintz*, a federal appellate court held that a charge dismissed pursuant to a plea agreement *could* have later Double Jeopardy implications. 16 F.3d 1101, 1106 (10th Cir. 1994). Petitioner objects to the Magistrate Judge's reference to *United States v. Angilau*, in which a later panel of the Tenth Circuit noted that *Mintz* is "in tension" with other Tenth Circuit decisions. 717 F.3d 781, 787 n.1 (10th Cir. 2013). Mr. Soto argues that, under the prior panel rule, the *Angilau* court was without power to overrule *Mintz*. But decisions of

11

other circuits only provide persuasive value, and *Angilau* weakens the persuasive value of *Mintz*.

In a thorough analysis, the Magistrate Judge noted that several federal circuits categorically hold that jeopardy does not attach to charges dismissed pursuant to a plea agreement. This portion of Petitioner's second objection is overruled.

B. **The *Serfass* Approach**

Alternatively, the Magistrate Judge noted that some federal circuits apply an approach like *Serfass v. United States*, 420 U.S. 377 (1975), when considering whether jeopardy attached to a charge dismissed pursuant to a plea agreement. In *Serfass*, the Court held that jeopardy did not attach to a dismissed indictment because the defendant was not "put to trial before the trier of facts" or "subjected to the risk of conviction." *Id.* at 389, 392 (internal quotations omitted). *Serfass* did not involve a charge dismissed pursuant to a plea agreement, but some circuit courts have extended the *Serfass* approach. *See United Sates v. Dionisio*, 503 F.3d 78, 89 (2d Cir. 2007) (holding that jeopardy only attaches to a charge dismissed under a plea agreement if "the dismissal entailed a resolution of any factual elements that went to the merits of the charges" and created a "risk of conviction"); *United States v. Vaughan*, 715 F.2d 1373, 1376–77 (9th Cir. 2013) (same).

Petitioner objects to the Magistrate Judge's acknowledgement of the *Serfass* approach, arguing that *Dionisio* and *Vaughan* were wrongly decided. Mr. Soto argues that *Serfass* is inapplicable because it did not involve charges dismissed pursuant to a plea agreement. While true, this fact is not dispositive—if *Serfass* were directly on point there would be little need to survey circuit courts for a persuasive rule of decision.

12

Petitioner's argument suggests only that the *Dionisio* and *Vaughan* courts were not *bound* by *Serfass*. The courts were nonetheless free to find the *Serfass* analysis applicable and extend it to charges dismissed under plea agreements. Mr. Soto does not present any reason to suggest that these decisions were unwise.

Petitioner then argues that even under the *Serfass* approach, the trial court's decision to dismiss the 2006 involuntary manslaughter charge "was the equivalent of a dismissal on the merits." (ECF No. 20, PageID.777.) In support of this assertion, Mr. Soto argues merely that the State could not immediately reindict him on the dismissed charges because of "the prosecutor's written promise." (*Id.*) But even if this were true, it would not be because of double jeopardy principles, but rather because the State breached the plea agreement. The Magistrate Judge noted that Mr. Soto is not presently arguing that the State breached the plea agreement; Petitioner's "sole ground for relief in the petition" is under the Double Jeopardy Clause. (ECF No. 18, PageID.474 n.3.) Petitioner did not object to this conclusion.

The Magistrate Judge's compelling analysis noted that, in several federal circuits, jeopardy does not attach to charges dismissed pursuant to a plea agreement unless the dismissal proceeding subjected the defendant to a risk of conviction. Here, Mr. Soto was never subjected to a risk of conviction on the 2006 involuntary manslaughter charge. This portion of the objection is overruled.

As the Magistrate Judge concluded, there is precedent in other circuits holding that, under these circumstances, jeopardy did not attach to the dismissed 2006 involuntary manslaughter charge. Petitioner's second objection is overruled.

## IV.

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in Petitioner's motion. Section 2253 provides, in part:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
> > (a) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> > (b) the final order in a proceeding under section 2255.
> 
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
> 
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

To make a "substantial showing" of the denial of a constitutional right, as required under § 2255(c)(2), a petitioner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

As the Magistrate Judge noted, this dissenting Ohio Supreme Court justice's analysis depended on setting aside the plea agreement that dismissed the 2006 involuntary manslaughter charge. (ECF No. 18, PageID.755 n.5. (citing *State v. Soto*, 2019-Ohio-4430, 158 Ohio St.3d 44, 54, 57 (2019) (Donnelly, J., dissenting)).) Because Mr. Soto never faced a determination of guilt on the involuntary manslaughter charge, reasonable jurists could not debate whether jeopardy attached to the involuntary

manslaughter charge—it did not. The Magistrate Judge's thorough, intellectual, and exhaustive analysis in this case leads to the conclusion that no certificate of appealability should issue.

### V.

For the foregoing reasons, this Court ADOPTS the Report and Recommendation of Magistrate Judge Greenberg. (ECF No. 18.) Mr. Soto's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1) is DENIED. Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis on which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b). IT IS SO ORDERED.

_____
DONALD C. NUGENT
Senior United States District Judge

Date: November 30, 2021